UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ISLANDER EAST PIPELINE CO., L.L.C., : | |
|     Plaintiff, : | |
| : | Case No. 06cv725 (JBA) |
| v. : | |
| : | |
| RICHARD BLUMENTHAL, ET AL., : | |
|     Defendants. : | |

**<u>RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. # 33]</u>**

Plaintiff Islander East Pipeline Company, L.L.C. ("Islander East") seeks declaratory and injunctive relief from the defendants' requirement that it obtain a state permit under Connecticut's Structures, Dredging and Fill Act ("SDF"), Conn. Gen. Stat. § 22a-359 <u>et seq.</u>, in order to lawfully carry out its activities related to construction of an interstate natural gas pipeline connecting New England and Eastern Long Island, including pre-construction core sampling. The action is brought against defendants Connecticut Attorney General Richard Blumenthal ("CT AG"), the State of Connecticut, the Connecticut Department of Environmental Protection ("CT DEP") and its Commissioner Gina McCarthy, and the Town of Branford and its First Selectwoman Cheryl Morris, and is in essence the mirror image of litigation commenced by defendant McCarthy to enjoin plaintiff from such construction until it obtains a state SDF permit. See <u>McCarthy v. Islander East</u>, No. 06cv756 (JBA) (D. Conn.). Plaintiff now moves for summary judgment, principally on

1

the grounds that the Natural Gas Act ("NGA"), 15 U.S.C. § 717 <u>et seq.</u>, and orders of the Federal Energy Regulatory Commission ("FERC") preempt the CT DEP's authority to require plaintiff to submit to SDF permitting.  Plaintiff's Motion for Summary Judgment is granted, as the Court finds that requiring plaintiff to obtain a state SDF permit for the pre-construction, construction, and operation of its federally authorized gas pipeline conflicts with FERC's orders certifying this project, and the permit requirement is therefore preempted by the federal NGA.

I.   **Factual Background**

Plaintiff Islander East, a Delaware natural-gas company with its principal place of business in Houston, Texas, is authorized by the FERC to construct and operate a gas pipeline project running from Connecticut to New York to supply natural gas to customers on Long Island.  In October 2001, plaintiff gave notice to CT DEP of its "core sampling" program in Long Island Sound needed to prepare construction plans for the project. Thereafter, the CT DEP wrote to the CT AG to advise that although "core sampling can be considered 'work incidental thereto' for purposes of the permitting authority of [the SDF statute],"[1] it

---

[1] The statute provides in relevant part:

> No person, firm or corporation, public, municipal or private, shall dredge, erect any structure, place any

2

decided "to not require an application from Islander East for this sampling work" based on the "determin[ation] that any sedimentation . . . would be short-term in nature and would be expected to minimally impact only those shellfish in the immediate vicinity of the core." (Nov. 5, 2001 CT DEP letter, Mulherr Aff. [Doc. #33], Ex. C.) Plaintiff's sampling program commenced in October 2001 but was interrupted by the arrest of an Islander East employee on charges of criminal trespass by the Branford police; the charges were dismissed in November 2002. (Apr. 27, 2006 Pl. letter, Mulherr Aff., Ex. D.)

Although the CT DEP had not required plaintiff to obtain a SDF permit, plaintiff submitted an application to the agency on February 13, 2002 and amended it in March 2003. (Jacobson Aff. [Doc. # 38-4] ¶¶ 3, 4.) In April 2003, the CT DEP informed plaintiff that the application processing fee would be $1.4 million. (Second Mulherr Aff. [Doc. # 40-2] ¶ 3.) Plaintiff disputed the amount of the fee, estimating that it should be only

---

fill, obstruction or encroachment or carry out any work incidental thereto or retain or maintain any structure, dredging or fill, in the tidal, coastal or navigable waters of the state waterward of the high tide line until such person, firm or corporation has submitted an application and has secured from said commissioner a certificate or permit for such work and has agreed to carry out any conditions necessary to the implementation of such certificate or permit.

Conn. Gen. Stat. § 22a-361(a).

3

$41,865. (Apr. 28, 2003 Pl. letter, Second Mulherr Aff., Ex. B.) The fee issue apparently was left unresolved, and the application process ceased. (Second Mulherr Aff. ¶ 6.)

Preliminary sampling was revived in 2006, when plaintiff advised the CT DEP in an April 27 letter that it was "now resuming the core sampling program, and offshore survey activities, and intends to take samples." (Id.) On May 9, 2006, plaintiff updated the agency on its "intention to resume the offshore core sampling no sooner than the week of May 22, 2006. The [CT DEP] has already determined that (1) the core sampling will have minimal impact, and (2) no permit is required for this activity under [the SDF statute]." (May 9, 2006 Pl. letter, Mulherr Aff., Ex. E.) Plaintiff stated that "[t]he impact of the core sampling that Islander East intends to resume will not materially differ from that previously reviewed by the Connecticut DEP in 2001." (Id.) Two days later, the CT DEP wrote plaintiff of its determination that plaintiff's "currently proposed activities" were "quite different" from those proposed in October 2001, and that the agency therefore "determined that the activities which [plaintiff] [had] outlined in the April 27, 2006 and May 9, 2006 letters are regulated activities which require authorization in the form of a [SDF] permit." (CT DEP May 11, 2006 letter, Mulherr Aff., Ex. F.)

4

CT DEP Commissioner Gina McCarthy brought a state court injunctive action dated May 15, 2006, seeking to enjoin Islander East from "conducting any drill, core sampling, invasive offshore survey and related activities in the waters of Long Island Sound . . . along or in the vicinity of the route of the proposed Islander East pipeline," which was removed to federal court. (See Compl. [Doc. # 1-3], McCarthy.) McCarthy's application for a temporary injunction to enjoin plaintiff from undertaking its scheduled surveys without first obtaining a SDF permit was heard and denied on May 19, 2006. (See [Doc. # 20], McCarthy.)[2]

FERC Proceedings

On December 21, 2001, after a hearing on non-environmental dimensions of the project, FERC issued a Preliminary Determination which "provide[d] certainty concerning the economic aspects of Islander East's . . . proposals" and certified the project pending environmental review. Islander East Pipeline Co., 97 F.E.R.C. ¶ 61,363 (2001). On September 19, 2002, after

---

[2] At the temporary injunction hearing on May 19, 2006, Susan L. Jacobson of the CT DEP acknowledged that the description in plaintiff's April 26, 2006 letter of "four water-based borings" was identical to the "four geotechnical borings" set out in plaintiff's 2001 letter to the agency, and explained that the CT DEP's decision to now require SDF permitting was based only on the map attached to plaintiff's 2006 letter indicating five or six borings, but which may have been "just . . . an error on the map." (See May 19, 2006 Hrg. Tr., McCarthy, 06cv756.) The record contains nothing further showing that plaintiff had substantively changed its exploratory borings plan between 2001 and 2006.

5

environmental review was completed, FERC issued its "final decision on Islander East's . . . request for authorizations," wherein FERC "determine[d] that the proposed facilities and services are required by public convenience and necessity." Islander East Pipeline Co., 100 F.E.R.C. ¶ 61,276 (2002) ("Order"). The FERC Order was issued with reference to the Final Environmental Impact Statement ("FEIS") prepared for the project pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4432 et seq., 18 C.F.R. § 380.6. In the Order, FERC "note[s] that the NGA and the regulations promulgated by the Commission under that statute generally preempt state and local law," but "encourages cooperation between interstate pipelines and local authorities. However, this does not mean that state and local agencies, through application of state or local laws, may prohibit or unreasonably delay the construction or operation of facilities approved by [FERC]." See 102 F.E.R.C. ¶ 61,276 at ¶¶ 62,111, 62,123.

Upon request for rehearing by inter alios defendants Town of Branford and the CT AG, FERC issued a second Order ("Rehearing Order") on January 17, 2003 specifically conditioning final approval of the project on completion of Islander East's surveys and environmental studies and issuance of federal permits under the Coastal Zone Management Act ("CZMA"), 16 U.S.C. § 1451 et

6

seq.,[3] and the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq.,[4] and stating that any state or local permits issued should be consistent with the conditions set by FERC. See Islander East Pipeline Co., 102 F.E.R.C. ¶ 61,054 (2003). "That a state or local authority requires something more or different than [FERC] . . . does not make it unreasonable for an applicant to comply with both [FERC's] and another agency's requirements," but where a conflict arises "between the requirements of a state or local agency and [FERC's] certificate conditions, the principles of preemption will apply and the federal authorization will preempt the state or local requirements." 102 F.E.R.C. ¶ 61,054 at ¶ 61,130.

## II. Standard

The facts underlying this Motion for Summary Judgment are not genuinely disputed, as all propositions in plaintiff's substituted Rule 56(a) Statement of Undisputed Facts are admitted in material part. (See Pl. 56(a)(1) [Doc. # 33-2]; Def. 56(a)(2)

---

[3] The State of Connecticut and the CT DEP's appeal from the Secretary of Commerce's override of the CT DEP's denial of the CZMA 16 U.S.C. § 1456(c)(3)(A) certificate to plaintiff is currently pending in this District. See State of Conn., et al. v. United States Dep't of Commerce, et al., No. 04cv1271 (SRU).

[4] The Second Circuit reviewed the CT DEP's denial of Islander East's water quality certificate application under CWA § 401 and concluded its denial was arbitrary and capricious, remanding Islander East's application to the agency for further action. See Islander East Pipeline Co., LLC v. Conn. Dep't of Env'tl. Prot., 467 F.3d 295 (2d Cir. 2006).

7

[Doc. # 38-3].) Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

**III. Discussion**

Islander East seeks a declaratory judgment that the CT DEP does not have the authority to require it to submit to the State's SDF permitting authority under Conn. Gen. Stat. § 22a-361, as well as a permanent injunction against state enforcement of such a requirement. Plaintiff advances three arguments in support of its position that defendants may not regulate, interfere with, or assert jurisdiction over plaintiff's FERC-certified natural gas pipeline construction activities: 1) that the NGA and FERC regulations preempt the State's SDF permitting program; 2) that Islander East does not require the State's consent to occupy submerged lands held by the State as a public trustee to perform its survey, construction, or operation activities; and 3) that this Court lacks jurisdiction to entertain a collateral attack on the FERC Orders or the activities authorized therein.[5] (See Pl. Mem.) Defendants

---

[5] It is unnecessary for the Court to address plaintiff's subordinate argument that "Islander East may acquire the right to

8

maintain in response: 1) that the SDF permitting requirement is compatible with and not preempted by the NGA; 2) that Connecticut has an absolute right to its public trust lands; and 3) that no collateral estoppel-type argument is applicable because defendants are "not challenging the validity of the FERC [O]rders." (See Def. Opp. Mem.)

**A. Preemption**

"The question of preemption 'is rooted in the Supremacy Clause of the Constitution. . . . [and] can generally occur in three ways: where Congress has expressly preempted state law, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or where federal law conflicts with state law." Wachovia Bank, N.A. v. Burke, 414 F.3d 305, 313-14 (2d Cir. 2005). Defendants argue that the NGA neither expressly nor implicitly preempts nor irreconcilably conflicts with state environmental law. Plaintiff, while agreeing that the NGA does not preempt state environmental laws, claims conflict preemption under its circumstances.

"The NGA long has been recognized as a 'comprehensive scheme of federal regulation of all wholesales of natural gas in

---

survey for, construct, and operate the Project in the Connecticut portion of Long Island Sound through the exercise of its federal eminent domain power" (Pl. Mem. at 11).

9

interstate commerce.' . . . The NGA confers upon FERC exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce for resale." Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 300-01 (1988). In National Fuel Gas Supply Corp. v. Public Service Commission of the State of New York, 894 F.2d 571 (2d Cir. 1990), the Second Circuit read Schneidewind to hold that New York's environmental regulation of plaintiff's FERC-approved project was preempted by the NGA, rejecting defendant's argument that piecemeal application of the New York law was possible to avoid conflict. "Because FERC has authority to consider environmental issues, states may not engage in concurrent site-specific environmental review." Id. at 579. See also Islander East Pipeline v. Conn. Dep't Env'tl. Prot., 467 F.3d 295, 305 (2d Cir. 2006) ("Congress wholly preempted and completely federalized the area of natural gas regulation by enacting the NGA.").

The FERC Orders require plaintiff to conduct preparatory surveys and authorize construction and operation of the pipeline, conditioned on obtaining federal CZMA and CWA permits, implicating coordination with the CT DEP.[6] As well, both FERC

---

[6] Under the CWA, "[a]ny applicant for a Federal license or permit to . . . construct[] or operat[e] . . . facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates." 33 U.S.C. § 1341(a). Similarly, under the CZMA, "any applicant for a required Federal

Orders reference "state or local permits issued with respect to the [project]" but specify that "this does not mean that state and local agencies, through application of state or local laws, may prohibit or unreasonably delay the construction or operation of facilities approved by [FERC]." The Rehearing Order stated that it would not "be unreasonable for an applicant to comply with both [FERC's] and another agency's requirements," but "between the requirements of a state or local agency and [FERC's] certificate conditions, the principles of preemption will apply and the federal authorization will preempt the state or local requirements."

Despite the language of the FERC Orders, the CT DEP claims authority to prosecute plaintiff's "unauthorized activities" because plaintiff has not received a SDF permit, Compl. ¶ 1, McCarthy, and asserts "authority to deny a permit" to Islander East (Def. Opp. Mem. at 9). Defendants concede that plaintiff cooperated with the CT DEP "to seek to obtain state and/or local permits as encouraged by the FERC [Orders]," namely the SDF permit in 2001.[7] (Def. 56(a)(2) ¶¶ 14, 15.) Were defendant CT

---

license or permit to conduct an activity . . . affecting any land or water use or natural resource of the coastal zone of that state shall provide . . . a certification that the proposed activity complies with the enforceable policies of the state's approved program." 16 U.S.C. § 1456(c)(3)(A).

[7] Presumably because the CT DEP concluded in November 2001 that core sampling boring would have minimal environmental impact and

11

DEP allowed to enforce the SDF requirement and potentially deny plaintiff's permit application, it would pose a significant obstacle to the project, presenting the "imminent possibility of collision . . . [with] the NGA," Schneidewind, 485 U.S. at 310.

As the FERC Order mandates Islander East's compliance with state and local requirements only where they do not conflict with FERC's and where compliance would not prohibit or delay construction and operation of the FERC-approved project, the Court finds that the defendants' imposition of a SDF permit requirement with respect to plaintiff's pipeline pre-construction and construction activities conflicts with and is therefore preempted by the Orders of FERC, which has "exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce for resale." Id. at 300-01.

**B. Jurisdiction**

In addition to the preemption issue, plaintiff claims that

---

that a SDF permit would therefore be unnecessary, it did not pursue the issue of this permitting requirement before the FERC in 2002 or 2003, nor when plaintiff applied for a SDF permit in February 2002 (amended March 2003), which fee dispute remained unresolved as of April 2003. Yet, in 2004, defendant resurrected the SDF permitting issue in its brief to the D.C. Circuit, arguing that the permit requirement fell within the State's authority over submerged lands. It withdrew its appeal and no more was heard on the issue until Spring 2006, when, 11 days before plaintiff's announced date for commencement of its core sampling project, the CT DEP informed plaintiff that it would now require a SDF permit before the core sampling could lawfully begin and sought injunctive relief against Islander East to force its compliance with the SDF permitting program.

the Court lacks jurisdiction to hear defendants' arguments concerning submerged lands, which were or should have been raised at FERC or on appeal at the D.C. Circuit, because defendants' assertion of rights constitutes a collateral attack on the FERC Orders.

Under Section 19(b) of the NGA:

> any party aggrieved by an order issued by [FERC] . . . may obtain a review of such order in the [circuit] court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia . . . No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do.

15 U.S.C. § 717r(b). Pursuant to this provision, it was incumbent on the defendants, if aggrieved by the FERC Orders, to pursue appeals before a proper Court of Appeals; indeed, the CT AG filed, but later withdrew, its appeal before the D.C. Circuit. The province of the district courts with respect to FERC certificates is "not appellate but, rather, to provide for enforcement." See Williams Natural Gas Co. v. City of Oklahoma, 890 F.2d 255, 264 (10th Cir. 1989) (holding that the state court lacked jurisdiction to entertain a challenge to a FERC certificate and reversing district court's decision to abstain from enforcing the FERC certificate based on the state court's

13

injunction: "Judicial review under § 19(b) is exclusive in the courts of appeals once the FERC certificate issues.").

In City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320 (1958), the Supreme Court examined whether the disputed issue of the City's legal capacity to act had been decided by the Court of Appeals in the context of a license issued by the Federal Power Commission (FERC's predecessor). The Supreme Court concluded:

> But even if it might be thought that this issue was not raised in the Court of Appeals, it cannot be doubted that it could and should have been, for that was the court to which Congress had given "exclusive jurisdiction to affirm, modify, or set aside" the Commission's order. And the State may not reserve the point, for another round of piecemeal litigation, by remaining silent on the issue while its action to review and reverse the Commission's order was pending in that court — which had "exclusive jurisdiction" of the proceeding and whose judgment therein as declared by Congress "shall be final," subject to review by this Court upon certiorari or certification.

City of Tacoma, 357 U.S. at 339. See, e.g., Tenn. Gas Pipeline Co. v. 104 Acres of Land, 749 F. Supp. 427 (D.R.I. 1990) ("Disputes over the validity of the certificate based on FERC's failure to require compliance with the [CWA] or state law must be brought to the Commission for rehearing."); Guardian Pipeline, L.L.C. v. 529.42 Acres of Land, 210 F. Supp. 2d 971 (N.D. Ill. 2002) ("The jurisdiction of this court is limited to evaluating the scope of the FERC Certificate and ordering condemnation as authorized by that certificate."). Thus, the relevant inquiry is

14

whether defendants' argument could and should have been raised before the FERC or the court having exclusive appellate jurisdiction.

After the FERC Order was issued, defendant CT AG moved for a stay based on inter alia the pendency of administrative proceedings related to Islander East's application for CWA and CZMA permits, and future "[Rivers and Harbors Act] section 10 and [CWA] 404 permit proceedings before the United States Army Corps of Engineers."[8] See Islander East, 102 F.E.R.C. at ¶ 61,116. The Rehearing Order denied the motion for stay, finding no showing of irreparable injury, and reasoning that Islander East in any case "cannot commence construction of the facilities until it receives all necessary federal permits, including federal permits issued by the State through its delegated authority." See id. at ¶ 61,118. In December 2004, the CT AG, on appeal of the FERC Orders, argued in its D.C. Circuit brief:

> No activity can occur on these public trust lands, . . . without permission from the State, which permission may take the form of a Structures and Dredging permit under Conn. Gen. Stat. § 22a-361. No such permit has been issued to Islander East. However, the Order baldly states . . . that all state permits must be consistent with the terms of the Order and cannot prohibit or delay this project.

---

[8] At the Rehearing, defendant CT DEP's motion for late intervention based in part on the Order's "interfere[nce] with the [CT] DEP Commissioner's CMZA permit process" was denied for lack of good cause. See Islander East, 102 F.E.R.C. at ¶¶ 61,115-16.

15

(See CT AG Br. [Doc. #40-7] at 32). On appeal, the CT AG relied on the doctrine of state sovereign immunity to argue that SDF permitting should not be subordinated to the FERC Orders. (Id. at 33.)

It is of no consequence that defendant CT AG ultimately withdrew its appeal to the D.C. Circuit; appeals from FERC Orders which could and should have been raised before the Court of Appeals may not be raised now before this Court, i.e., such issues must be raised "by direct attack, pursuant to the appellate structure of § 19(b), or not at all," Williams Natural Gas Co. v. Okla. City, 890 F.2d at 264 (citing City of Tacoma, 357 U.S. at 336). The public trust argument is identical to defendants' present contention that Connecticut can require SDF permitting because it holds submerged lands "in public trust for the benefit of all of its citizens" (Defs. Opp. Mem. at 10); therefore, the submerged lands issue is beyond this Court's jurisdictional purview and may not serve as a ground for defendant CT DEP to require SDF permitting of plaintiff.

### C. Requested Relief

Having found SDF permitting as applied to plaintiff to be preempted by the NGA and the FERC Orders, the Court grants summary judgment to Islander East pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (authorizing the federal courts to

16

render declaratory judgments in any "case of actual controversy within [their] jurisdiction"); see Sheet Metal Div. v. Local 38 of the Sheet Metal Workers Int'l Ass'n, 208 F.3d 18, 22 (2d Cir. 2000) ("It is well-settled that the trial court's decision to exercise declaratory jurisdiction is a discretionary one.") (internal quotation marks and citation omitted). Accordingly, a declaratory judgment will enter that the SDF permit program, with respect to plaintiff's pre-construction surveys and construction and operation of its FERC-certified natural gas pipeline project, is preempted by the NGA and FERC regulations and orders issued thereunder.

Having entered a declaratory judgment that the state SDF permitting program is preempted as applied to Islander East's pipeline construction operation, the Court considers plaintiff's request for preliminary and/or permanent injunction. "Generally, courts have invoked the [Declaratory Judgment] Act to permit plaintiffs who have won a declaratory judgment from the court to enforce that judgment through injunction, damages and other relief." Starter Corp. v. Converse, Inc., 170 F.3d 286, 298 (2d Cir. 1999). Presuming that the defendants will take no further enforcement action to require plaintiff to obtain a SDF permit, in accordance with this declaratory judgment, and will

17

accordingly withdraw forthwith McCarthy v. Islander East, No. 06cv756, which seeks to enforce plaintiff's compliance with the SDF permitting program, the Court sees no need for injunctive relief to enforce its declaratory judgment.

## IV. Conclusion

Accordingly, Plaintiff's Motion for Summary Judgment [Doc. # 33] is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/

JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 22nd day of March, 2007.**